UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL DOCKET** |
| **VERSUS** | * | **NO. 05-304** |
| **BARRY S. SCHEUR, ET AL.** | * | **SECTION "L" (2)** |

## ORDER & REASONS

Before the Court is Barry Scheur's Motion to Reconsider (Rec. Doc. 150).[1]  The Defendants ask the Court to reconsider its Order & Reasons of January 3, 2007 denying their motions to dismiss all counts of the Second Superseding Indictment.  *See* Rec. Doc. 142.  With the benefit of further briefing and argument, the Court now GRANTS the Defendants' motion to reconsider and hereby DISMISSES the Indictment (Rec. Doc. 1), the Superseding Indictment (Rec. Doc. 33), and the Second Superseding Indictment (Rec. Doc. 80) in their entirety as to all Defendants.[2]

**I.   BACKGROUND**

The factual and procedural background of this case are discussed in the Court's Order & Reasons of January 3, 2007.  In that decision, the Court framed the issue presented by the Defendants' motions as follows:

---

[1] By Order of the Court, the remaining Defendants in this case, Robert McMillan, Rodney Moyer, and Danette Bruno, are deemed to have joined in the instant motion to reconsider.  *See* Rec. Docs. 100 & 119.

[2] While the Court refers only to the Second Superseding Indictment in the text of this Order & Reasons, the previous indictments suffer from the same problem and thus are subject to the same disposition.

> The Second Superseding Indictment in this case falls somewhere between *Cleveland* and *Christopher*. The indictment does not specifically allege that the Defendants fraudulently obtained a license to operate The Oath in Louisiana, perhaps in deference to *Cleveland*. However, the indictment also does not specifically allege that the Defendants defrauded or "looted" The Oath, its insureds, or other third parties. *Cf. Christopher*, 342 F.3d at 385 (noting that the indictment made clear that "the 'bottom line' of the scheme was to defraud the insurance companies of their assets").

*See* Rec. Doc. 142. The Court reached the following conclusion:

> While the indictment does not explicitly state that the insureds and medical providers were defrauded, the Court nevertheless finds that the indictment conforms to minimal constitutional standards. *See Gordon*, 780 F.2d at 1169. Indeed, all of the facts alleged in the indictment, which the Court must accept as true, lead to the inescapable conclusion that in addition to defrauding the LDOI, the Defendants also defrauded insureds and medical providers of property, namely money.

*See* Rec. Doc. 142.

## II.   PRESENT MOTION

The Defendants ask the Court to reconsider the conclusion stated in its January 3, 2007 Order & Reasons denying their motions to dismiss that the Second Superseding Indictment in this case does not run afoul of the rule announced in *Cleveland v. United States*, 531 U.S. 12 (2000). The Defendants argue that by reading in an implication, or "inescapable conclusion," that entities other than the LDOI were defrauded, the Court constructively amended the indictment in contravention of the Defendants' Fifth Amendment right to grand jury indictment. *See United States v. Hoover*, 467 F.3d 496 (5th Cir. 2006). The Defendants re-urge their argument that the Second Superseding Indictment on its face fails to state offenses against the United States. The Government contends that a constructive amendment challenge must necessarily await trial, but that in any event, the Court has not broadened or constructively amended the indictment.

### III.    LAW & ANALYSIS

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."  U.S. Const. amend. V.  "Ever since *Ex Parte Bain* in 1887, it has been the rule that after an indictment has been returned the charges may not be broadened through amendment except by the grand jury itself."  *Stirone v. United States*, 361 U.S. 212, 215 (1960).  As noted in *Ex Parte Bain*:

> If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance the common law attached to an indictment by a grand jury . . . may be frittered away until its value is almost destroyed.

*Ex Parte Bain*, 121 U.S. 1, 10 (1887).

The Government is correct that in denying the Defendants' motions to dismiss, the Court merely found that the indictment conformed to minimal constitutional standards, and thus that a constructive amendment challenge is premature.  *See, e.g., United States v. Phillips*, 2007 WL 172131, at *5 (5th Cir. 2007) ("In evaluating whether constructive amendment has occurred, we consider 'whether the jury instruction, taken as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them.'") (quoting *United States v. Guidry*, 406 F.3d 314, 321 (5th Cir. 2005)).

However, the Defendants' argument does shed light on constitutional problems that will undoubtedly arise at trial, problems that the Court did not adequately consider in its previous Order & Reasons.  Although the underlying facts in this case more closely resemble those in *Christopher v. Miles*, 342 F.3d 378 (5 th Cir. 2003), *United States v. Stewart*, 151 F. Supp. 2d 572 (E.D. Pa. 2001), and *United States v. Shelton*, No. 1:00CR127-P-D, 2001 U.S. Dist. LEXIS

24594 (N.D. Miss. July 26, 2001), the Court (and ultimately the jury) is limited by the words of the Second Superseding Indictment.  A mere showing that the LDOI was defrauded and that The Oath was unjustly enriched will not satisfy the Government's burden at trial.  Under *Cleveland*, the Government must also prove that the Defendants defrauded someone other than the LDOI of "property."  But as noted in the Court's Order & Reasons, "the indictment does not explicitly state that the insureds and medical providers [or anyone else] were defrauded."  See Rec. Doc. 142.  Without the "inescapable conclusion" reached by the Court, the Second Superseding Indictment fails to state an offense under *Cleveland*.[3]

While the Court's analysis in its Order & Reasons may have been appropriate in resolving a motion to dismiss a civil complaint for failure to state a claim (where notice pleading is the rule), and while the indictment may <u>theoretically</u> have been able to (barely) survive its equivalent in the criminal context, when viewed in the practical world of what will be required at trial, the Second Superseding Indictment cannot survive scrutiny.  At trial, to survive the "*Cleveland* guillotine," the Government would have to prove that specific victims, other than the

---

[3] The cases relied upon by the Government must be read in light of the subsequent decision by the United States Supreme Court in *Cleveland*.  *See United States v. Pepper*, 51 F.3d 469, 472 (5th Cir. 1995) ("There is no statutory requirement that direct misrepresentations must be made to the victims of the scheme."); *United States v. Hatch*, 926 F.2d 387, 392 (5th Cir. 1991) ("The focus of the mail fraud statute is upon the use of the mail to further a scheme to defraud, not upon any particular kind of victim. . . . [F]ailure to define precisely the victim of the scheme to defraud does not prevent conviction under the mail fraud statute.").  While these are no doubt still correct statements of the law, *Cleveland* has imposed an overriding condition that "§ 1341 requires the object of the fraud to be 'property' in the victim's hands." *Cleveland*, 531 U.S. at 26-27.  Beyond the general allegation in the first paragraph of the Second Superseding Indictment that The Oath "received insurance premiums . . . and, in turn, paid medical providers," the indictment makes no reference to any victims defrauded of "property."  Although the Government has amended the original indictment on two occasions, the Second Superseding Indictment remains silent in this respect.

LDOI, were defrauded of specific property. This was not set forth in the indictment. Thus, a conviction based on such proof would, in effect, result in a stretching or amending of the indictment by the Court, which is constitutionally forbidden. Furthermore, whether or not this indictment runs afoul of *Cleveland* is, at most, a very close call. In such an instance, the parties, society, and the judicial system are best served by allowing an appellate court to consider the matter at its embryonic stage, rather than after a full term, lengthy trial.

## IV.   CONCLUSION

Accordingly, IT IS ORDERED that Scheur's motion to reconsider, in which McMillan, Moyer, and Bruno are deemed to have joined, is GRANTED and that upon further consideration the Indictment (Rec. Doc. 1), the Superseding Indictment (Rec. Doc. 33), and the Second Superseding Indictment (Rec. Doc. 80) are hereby DISMISSED IN THEIR ENTIRETY as to all Defendants.

IT IS FURTHER ORDERED that the pretrial conference and trial dates are CANCELLED.

New Orleans, Louisiana, this  3rd  day of   April  , 2007.

_____
UNITED STATES DISTRICT JUDGE